IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MASTEC NORTH AMERICA, INC.,
and MASTEC, INC.,

      Plaintiffs,

    v.

COOS COUNTY,

      Defendant.

Civ. No. 04-278-AA

OPINION AND ORDER

---

COOS COUNTY,

      Third-Party Plaintiff,

v.

AMERICAN MANUFACTURERS MUTUAL
INSURANCE COMPANY, ARCH
INSURANCE COMPANY, INDUSTRIAL
GAS SERVICES, INC., and PIPELINE
SOLUTIONS, INC.,

      Third-Party Defendants.

---

1   - OPINION AND ORDER

David A. Bledsoe
Julia E. Markley
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209
        Attorneys for plaintiffs

Jay T. Waldron
Carson Bowler
Jill Schneider
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 S.W. 5th Avenue, Suites 1600-1900
Portland, OR  97204
        Attorneys for defendant/third-party plaintiff Coos County

Arnold L. Gray
Angela M. Otto
STEWART SOKOL & GRAY, LLC
2300 SW First Avenue, Suite 200
Portland, OR  97201
        Attorneys for third-party defendants Industrial Gas
        Services, Inc. and Pipeline Solutions, Inc.

AIKEN, Judge:

        In their Fourth Amended Complaint, plaintiffs MasTec North
America, Inc. and MasTec, Inc. bring claims against defendant Coos
County for breach of contract, reformation of contract, assignment
of rights, and *quantum meruit* arising from the construction of a
natural gas pipeline project.  In turn, Coos County asserts
counterclaims for breach of contract, indemnification, declaratory
and injunctive relief and third-party claims for breach of
contract, indemnification, and declaratory and injunctive relief.

        Coos County now moves for partial summary judgment against
plaintiffs on four grounds.  First, Coos County argues that
plaintiffs breached their duty to defend Coos County against claims

2    - OPINION AND ORDER

brought by administrative agencies and private parties. Second, Coos County contends that plaintiffs cannot recover expenses under Request for Change Order 130. Third, Coos County maintains that plaintiffs cannot introduce their settlement proposal to establish Coos County's failure to mitigate damages. Finally, Coos County argues that all of plaintiffs' claims are barred by their failure to comply with Oregon licensing requirements.

Third-party plaintiffs Industrial Gas Services, Inc. (IGS) and Pipeline Solutions, Inc. (PSI) also move for partial summary judgment on Coos County's third party indemnity claims.

<u>BACKGROUND</u>

In early 2003, Coos County requested bids to build a natural gas pipeline from Douglas County to Coos County. The pipeline system was to include a main pipeline approximately sixty miles long, with thirty miles of lateral pipelines. Coos County hired IGS and PSI as project advisors to design, engineer, and manage construction of the pipeline construction project.

On or about May 7, 2003, Coos County - through IGS and PSI - issued revised bid documents and solicited bids for the construction of the pipeline.

Plaintiff MasTec, Inc. is a publicly-traded corporation that operates through and provides financing for its subsidiaries. Plaintiff MasTec North America, Inc. (MasTec N.A.) is a construction company and wholly-owned subsidiary of Mastec, Inc.

On May 20, 2003, plaintiffs and others submitted bids for the pipeline construction. Although "MasTec North America, Inc." was named on the bid bond submitted to Coos County, "MasTec, Inc." was named as the contractor on the bid documents.

After plaintiffs returned the lowest bid, Coos County and the project advisors conducted a due diligence inquiry and awarded plaintiffs the pipeline construction contract (the Contract).

On June 18, 2003, plaintiffs and Coos County formally executed the Contract, and plaintiffs began construction of the pipeline. Plaintiffs allege that Coos County knew and agreed that MasTec N.A. would perform the work under the Contract, even though MasTec, Inc. is identified as the contracting party.

To secure plaintiffs' contractual obligations, third-party defendants American Manufacturer's Mutual Insurance Co. and Arch Insurance Co. issued bid bonds and performance and payment bonds on behalf of MasTec N.A., as Principal, to Coos County, as Obligee.

On August 19, 2003, the Oregon Construction Contractors Board (CCB) notified MasTec N.A. that its license would lapse if it did not submit a new bond before August 29, 2003 – the expiration date of its existing bond. On September 15, 2003, MasTec N.A. provided the CCB with a bond backdated to August 28, 2003, and the CCB reinstated MasTec N.A.'s license.

On September 19, 2003, the United States Army Corps of Engineers (the Corps) issued a Notice of Non-Compliance to Coos

County for violations of the permit issued by the Corps for the pipeline construction. The Corps cited Coos County for violations of the permit and the Clean Water Act (CWA) and identified potential enforcement actions, including an administrative enforcement action or federal lawsuit. The Corps also issued Cease and Desist Orders, notifying Coos County that it would be liable for civil damages unless immediate action was taken to comply with the terms of the permit and state and federal laws.

Between October 8, 2003 and April 30, 2004, the Oregon Department of Environmental Quality (DEQ) sent eight separate Notices of Non-Compliance to Coos County and plaintiffs for alleged violations of the state permit issued for the pipeline construction. Ultimately, on August 9, 2004, DEQ issued a Notice of Violation to Coos County and sought civil penalties for the alleged violations.

On December 8, 2003, the Sierra Club and others filed a $4.3 million citizens suit against plaintiffs and Coos County alleging violations of the CWA arising from drilling of the pipeline.

By letters dated December 22, 2003 and January 7, 2004, Coos County tendered the pending claims and enforcement actions brought by the Corps, DEQ, and the Sierra Club to plaintiffs. Plaintiffs refused the tender of defense.

On January 7, 2004, Coos County sent plaintiffs a notice of default.

5    - OPINION AND ORDER

On February 25, 2004, plaintiffs filed suit against Coos County for breach of contract, alleging that since December 2003, Coos County has wrongfully refused to pay plaintiffs for work performed under the Contract.

On February 26, 2004, plaintiffs submitted Request for Change Order (RFCO) 130.  Plaintiffs sought over $2 million for equipment, lost time, and other expenses incurred in complying with unanticipated fire protection restrictions imposed by the Coos Fire Protection Association.  Coos County denied RFCO 130.

On April 21, 2004, Coos County terminated the Contract, claiming that plaintiffs had failed to perform under the Contract.

By letter dated May 24, 2004, plaintiffs offered to complete the pipeline project for an estimated $4.2 to $4.5 million and defend Coos County against the administrative enforcement actions and civil suit.  In turn, plaintiffs sought $4.5 million in "undisputed" payments for past work and an agreement that all remaining disputes would be deferred and resolved through binding arbitration.  In a follow-up letter dated May 26, 2004, plaintiffs offered to cap the cost of future work at $4.5 million if Coos County did not change the design of the pipeline.

On May 27, 2004, Coos County responded to plaintiffs' letter and inquired whether plaintiffs would agree to repair property and other damage allegedly caused by plaintiffs.  Plaintiffs replied that they would complete all work "as provided in the contract."

Coos County rejected plaintiffs' offer and contracted with Rockford Corporation to complete construction of the pipeline.

<u>STANDARD</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id.</u> at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the

underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Elec., 809 F.2d at 630.

DISCUSSION

A.  Coos County's Motion for Partial Summary Judgment

    1.  Duty to Defend

    Coos County argues that the indemnity provisions of the Contract triggered plaintiffs' duty to defend Coos County against enforcement actions brought by the Corps and DEQ and the civil lawsuit brought by the Sierra Club, and that plaintiffs breached that duty by failing to accept Coos County's tender.  Plaintiffs do not deny that they must defend Coos County against claims arising from their work; however, they argue that the actions filed against Coos County were not caused by their actions and that Coos County's breaches of the Contract discharged plaintiffs' duty to defend.

    The duty to defend is independent of the duty to indemnify, and the test for breach of the former is different from that of the latter.  Northwest Pump & Equip. Co. v. Am. States Ins. Co., 144 Or. App. 222, 227, 925 P.2d 1241 (1996).  "The duty to defend is triggered by the bare allegations of a pleading.  In contrast, the duty to indemnify is established by proof of actual facts demonstrating a right to coverage."  Id.  Thus, "[a]n insurer has a duty to defend if the factual allegations of the complaint . . . state a claim for any [conduct] covered by the [contract]."  Marleau v. Truck Ins. Exchange, 333 Or. 82, 91, 37 P.3d 148 (2001).

The plain language of the Contract requires plaintiffs to "indemnify and hold County harmless from liability or penalty . . . imposed or asserted by reason of the failure or alleged failure of Contractor of any of its subcontractors, or the agents and employees of any of them" or the "negligence, alleged negligence, error, omission, or wrongful act(s) of Contractor, or any of its subcontractors." Contract § 3.2001 (attached to Declaration of Carson Bowler (Bowler Decl.) as Exhibit 1). Plaintiffs also agreed to defend claims against Coos County "caused or alleged to have been caused by any acts or omissions of the Contractor on account of which Contractor has agreed to hold harmless, even if such suit is groundless . . . ." Contract § 3.1509. Thus, the question is whether the actions brought against Coos County allege conduct covered by the Contract. I find that they do.

The Corps' Notice of Non-Compliance alleges that "drilling activities" on the pipeline caused impermissible discharge into waters and exceeded the scope of the work authorized by permit. More specifically, the Corps asserted that "horizontal directional drilling caused frack-outs resulting in discharges of dredged and fill materials into tributaries crossed by the utility line activity." Bowler Decl., Ex. 11, p. 1. Likewise, the DEQ Notice of Non-Compliance stated the lack of erosion and run-off controls allowed the discharge of mud into streams and tributaries. Bowler Decl., Ex. 12.

9    - OPINION AND ORDER

Similarly, the complaint filed by the Sierra Club alleged that while drilling beneath several streams, "MasTec and its employees" caused the discharge of drilling lubricants and other substances that constituted "pollutants" and/or "toxic pollutants" within the meaning of the CWA. The complaint further alleged that the permits acquired by plaintiffs and Coos County did not authorize the discharge of drilling lubricants. Bowler Decl., Ex. 10, pp. 6-7.

In other words, the Corps, the DEQ, and the Sierra Club alleged that drilling activities and the lack of erosion and run-off controls resulted in unlawful discharges of mud and drilling lubricants - actions that imply negligence, error, or omission on the part of plaintiffs, thus triggering their duty to defend. Even though plaintiffs may argue that Coos County's negligence caused the permit violations, the court looks only to the conduct alleged in the Notices of Non-Compliance and the civil complaint to determine whether a duty to defend exists. Accordingly, I find that plaintiffs had a duty to defend the administrative actions and the civil lawsuit filed against Coos County.

Plaintiffs nonetheless argue that they did not breach their duty to defend when they refused Coos County's tender of defense in January 2004. Rather, plaintiffs contend that they offered to defend Coos County against the notices of non-compliance and the Sierra Club lawsuit in their letter of May 24, 2004. However, plaintiffs' offer to defend was in the context of resolving the

parties' dispute over continuing work and was contingent on Coos County paying "non-disputed" invoices and agreeing to binding arbitration. Therefore, questions of fact remain as to plaintiffs' willingness to assume their duty to defend.

Next, plaintiffs maintain that Coos County materially breached the Contract by failing to pay plaintiffs amounts due and by failing to perform its environmental duties under the Contract. According to plaintiffs, when Coos County tendered defense of these actions, it owed plaintiffs over $4 million in progress payments and had made clear that it did not intend to pay plaintiffs. Plaintiffs also argue that Coos County failed to secure adequate and appropriate permits for the pipeline construction and improperly instructed plaintiffs with respect to erosion controls. Thus, plaintiffs contend that Coos County's material breaches discharged plaintiffs from their obligation to defend Coos County against the administrative and civil actions.

Based on the evidence presented, I find that a question of fact exists as to whether Coos County's alleged failures constituted material breaches of the Contract, thus excusing plaintiffs from their contractual duties, including their duty to defend. McKeon v. Williams, 104 Or. App. 106, 109-10, 799 P.2d 198 (1990) (whether a breach is material is generally a question of fact). Accordingly, Coos County's motion is granted to the extent that plaintiffs had a duty to defend.

2.  Change Order

Next, Coos County argues that plaintiffs cannot seek payment for RFCO 130, a change order that requests payment for work that is outside of the Contract.

Submitted on February 26, 2004, RFCO 130 requests payment in the amount of $2,326,167.26 for expenses incurred from July through November 2003 in order to comply with requirements of the Coos Forest Protective Association (CFPA).  Plaintiffs assert that these expenses, which include extra firefighting equipment and lost time, are "above and beyond the requirements of the contract."  Bowler Decl., Ex. 6, p. 1.[1]  Coos County argues that plaintiffs are not entitled to recover expenses claimed under RFCO 130, because compliance with CFPA requirements is anticipated under the Contract.  Further, Coos County maintains that plaintiffs failed to obtain prior approval for the RFCO 130.

Under § 3.1201 of the Contract:

Contractor shall familiarize itself with [required] permits and shall comply with all terms and provisions of the permits and regulations and requirements established by authorities having jurisdiction.  Contractor . . . shall comply with the laws of all jurisdictions in which the Work is located . . . .  Contractor shall be responsible for giving the required notice to the proper authorities in advance of commencing work at all such locations.

---

[1]Plaintiffs argue that the requirement of a 500-gallon water wagon and related equipment with each crew (with 20 crews working simultaneously) caused most of the unanticipated expenses, along with shutdowns of crew operations after 1 pm due to fire danger.

Similarly, an Environmental Impact Statement incorporated into the Contract required plaintiffs to comply with state fire regulations. Contract §; 1.0301; EIS, App. J.  Finally, the Contract prohibits "total or partial shutdown payments for delays" resulting from "restraints or prohibitions" imposed by "any board, department, commission or agency of the Federal or State Government having jurisdiction of the parties . . . ."  Contract §§ 3.0704, 3.2202.

Local fire protective associations such as the CFPA are authorized by state law to contract with the Oregon Department of Forestry for the "prevention and suppression of fire on forestland."  Or. Rev. Stat. § 477.406(1) ("The forester and a forest protective association may enter into a contract or agreement with each other or, jointly or separately, with a federal or state agency, political subdivision, corporation, responsible organization or responsible landowner or group of landowners for the prevention and suppression of fire on forestland or on land other than forestland, or both, to prevent and suppress fire.").  Based on this contracting authority, Coos County maintains that the CFPA is authorized to exercise jurisdiction over forestry lands to enforce fire protection permits and regulations.

However, "[t]he Coos Forest Protective Association is a private, non-profit corporation in the business of providing protection from fires to its corporate members.  Under an agreement with the Oregon State Forester, the Association also provides

protection to other private, state, county and federal lands." <u>See</u>
Declaration of Julia E. Markley, Ex. 40, p. 3.  According to the
CFPA, its objective "is to minimize the cost of suppression and the
damage to the forest and watershed environment caused by wildfire
and to respond to all fire control emergences with an effective,
well trained, equipped and supervised fire control organization .
. . ." <u>Id.</u>  Thus, even though the CFPA may contract with the State
to provide fire protection measures, Coos County presents no
evidence that the restrictions imposed by the CFPA were "in
conformity with the rules promulgated by the State Forester," Or.
Rev. Stat. §§ 477.650, 477.655, or that CFPA personnel were
authorized fire wardens who may enforce fire prevention regulations
on behalf of the State, Or. Admin. R. 629-047-0060 (2003) (attached
as Exhibit 32 to Second Bowler Decl.).  Therefore, absent
additional evidence regarding the CFPA's authority for the
restrictions imposed, I cannot find that restrictions imposed by
the CFPA were anticipated under the Contract as requirements of an
"authority" having jurisdiction.

   Even if compliance with CFPA requirements was not anticipated
by the Contract, Coos County argues that plaintiffs are not
entitled to payment for RFCO 130, because plaintiffs failed to
provide notice or obtain prior written approval for the change
order as required by the Contract and Oregon statute.

   The Contract prohibits the performance of extra work without

a "properly signed and approved Change Order authorizing such change or extra work" and require written notice of extra work. Contract §§ 3.042 and 3.043.    Likewise, the Oregon statute governing the Contract requires the "successful bidder" of a public improvement contract to "immediately give notice" to the contracting agency of "a condition not referred to in the solicitation documents, not caused by the successful bidder and not discoverable by a reasonable prebid visual site inspection" that "requires compliance with the ordinances, rules or regulations" enacted by federal, state and local agencies for the prevention of environmental pollution and the preservation of natural resources. *Former* Or. Rev. Stat. § 279.318(1) and (3).    Further, "[e]xcept in the case of an emergency and except as may otherwise be required by any environmental or natural resource regulation, the successful bidder shall not commence work nor incur any additional job site costs . . . without written direction from the public contracting agency."    Id. § 279.318(4).    Thus, Coos County argues that plaintiffs were required to give notice of the extra work required by the CFPA and obtain written approval before completing such work.

Plaintiffs argue that Coos County waived the notice and prior approval requirements of the Contract, because Coos County directed plaintiffs to comply with CFPA restrictions and had previously authorized change orders without requiring notice or prior

approval.    See Declaration of Clark Besack, ¶ 21.    Further, plaintiffs maintain that *former* § 279.318 does not apply, because the CFPA is not a state or local agency with enacted ordinances, rules, or regulations.    Even if applicable, plaintiffs argue that the exceptions for emergencies and requirements of "any environmental or natural resource ordinance, rule or regulation" under *former* § 279.318 excused it from complying with the notice and approval requirements.

I find that genuine issues of fact exist as to whether Coos County, through its prior conduct, waived its contractual right to prior notification and written approval for change orders submitted by plaintiffs.    "Under general contract law, a party to a written contract can waive a provision of that contract by conduct or by oral representation, despite the existence of a nonwaiver clause." See, e.g., Moore v. Mutual of Enumclaw Ins. Co., 317 Or. 235, 241, 855 P.2d 626 (1993); Fisher v. Tiffin, 275 Or. 437, 441-42, 551 P.2d 1061 (1976) (vendor's long-standing practice of accepting late payments constituted waiver of time provisions despite nonwaiver clause).    Plaintiffs present evidence that Coos County did not require prior notice and approval for other change orders, thus raising an issue of fact as to whether it waived those provisions of the Contract through its conduct.

Likewise, for the reasons explained above, I find that it remains unclear whether *former* § 279.318 applies to the

restrictions imposed by the CFPA as "ordinances, rules or regulations" enacted by a federal, state, or local agency. Regardless, questions of fact remain as to whether plaintiffs were excused from the notice and approval requirements based on the circumstances under which the CFPA imposed the restrictions. As explained by plaintiffs, the CFPA required them to employ fire protection measures immediately and that the purpose of those restrictions would have been defeated had they continued with the project while waiting for approval of a change work order.

Therefore, Coos County's motion for summary judgment is denied on this ground.

### 3. Limitation on Breach of Contract Damages

Coos County next argues that Federal Rule of Evidence 408 bars plaintiffs from relying on their contingent settlement offer of May 24, 2004 to show that Coos County failed to mitigate damages. See Bowler Decl., Exs. 17-20.[2] Plaintiffs respond that their offer to complete the pipeline project for $4.5 million is not prohibited by Rule 408, because the offer did not require either party to compromise their claims. Plaintiffs also argue that Rule 408 does not prohibit admission of a settlement offer when introduced to show a failure to mitigate damages.

---

[2]Plaintiffs' expert, Jay Sickler, opines that Coos County failed to mitigate damages when it refused plaintiffs' offer to finish the pipeline project for $4.5 million. Bowler Decl., Ex. 26.

17  - OPINION AND ORDER

Federal Rule of Evidence 408 prohibits admission of settlement negotiations to prove liability for a claim or its amount. Fed. R. Evid. 408(a). Settlement negotiations include an offer or promise to provide or accept "valuable consideration" to settle a claim, as well as "conduct or statements made in compromise negotiations regarding the claim . . . ." Fed. R. Evid. 408(a)(1),(2).

Plaintiffs maintain that their May 24 offer did not include an offer for "valuable consideration" to settle Coos County's claims but simply required the parties to defer their outstanding claims until binding arbitration at a later date. See Lightfoot v. Union Carbide Corp., 110 F.3d 898, 909 (2d Cir. 1997) (an unconditional offer cannot be considered an offer of settlement). Coos County counters that the May 24 letter and June 1 follow-up letter make clear that plaintiffs' proposal was contingent on Coos County's dismissal and abandonment of its counterclaims.

While plaintiffs' June 1 letter clarifies that their proposal required plaintiffs and Coos County to dismiss all claims alleged in this lawsuit and submit the issue of monies owed to binding arbitration, it remains unclear whether the proposal barred Coos County from raising its counterclaims in arbitration. Thus, it is questionable whether the letters constitute "settlement negotiations" for purposes of Rule 408.

Regardless, Rule 408 does not prohibit the use of settlement negotiations for purposes other than liability or the amount of a

claim. Fed. R. Evid. 408(b). In fact, several courts have ruled that Rule 408 does not exclude evidence of settlement negotiations if relevant to mitigation of damages. See <u>Bhandari v. First Nat'l Bank of Commerce</u>, 808 F.2d 1082, 1103 (5th Cir. 1987) (bank's offer of settlement was admissible to show that plaintiff did not mitigate damages); <u>Urico v. Parnell Oil Co.</u>, 708 F.2d 852, 854-55 (1st Cir. 1983) (admitting evidence of settlement negotiations introduced by offeror to excuse the failure to mitigate was permissible under Rule 408); <u>Innovative Eng'g & Consulting Corp. v. Hurley & Assoc., Inc.</u>, 2006 WL 2806387 *8-9 (N.D. Ohio Sept. 28, 2006); <u>Thomas v. Resort Health Related Facility</u>, 539 F. Supp. 630, 638 (E.D.N.Y. 1982) (evidence of employer's offer to reinstate employee admissible to limit availability of back pay); <u>but see Pierce v. F.R. Tripler & Co.</u>, 955 F.2d 820, 826-27 (2d Cir. 1992) ("Evidence that demonstrates a failure to mitigate damages goes to the 'amount' of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408.").

Ultimately, whether plaintiffs can introduce their May 24 offer to show Coos County's failure to mitigate damages is an evidentiary issue properly raised in a motion in limine rather than a motion for summary judgment. Even without the offer, plaintiffs could argue that Coos County failed to mitigate damages by terminating plaintiffs and hiring another company to complete the

project for significantly more than plaintiffs would have received under the Contract.  Essentially, Coos County seeks an evidentiary ruling that bars admission of the May 24 and June 1 letters at trial.

At this stage of the proceedings I am not inclined to render an evidentiary ruling without some idea of the evidence that the parties will present at trial.  Even if admitted, plaintiffs' offer would not cap Coos County's damages as a matter of law.  Whether Coos County was justified in rejecting plaintiffs' offer, like the issue of mitigating damages, is a question of fact.  <u>Vuylsteke v. Broan</u>, 172 Or. App. 74, 94, 17 P.3d 1072 (2001) ("The question of whether a plaintiff properly mitigated damages is a question of fact.").  Accordingly, Coos County's motion on this ground is denied with leave to renew at trial.

### 4.  Licensing Requirements

Finally, Coos County renews its argument that plaintiffs are barred from filing suit, because they did not possess a valid CCB license continuously during the pipeline construction project.  Or. Rev. Stat § 701.065.  Coos County previously sought dismissal of plaintiffs' claims on this ground, and I denied the motion based on outstanding issues of fact.

Under Oregon law, contractors must possess a valid license from the CCB before bidding on or undertaking construction projects.  Or. Rev. Stat. § 701.055(1).  Furthermore, a contractor

20   - OPINION AND ORDER

may not commence legal action "in any court of this state for
compensation for the performance of any work or for the breach of
any contract for work that is subject to this chapter, unless the
contractor had a valid license" when "the contractor bid or entered
into the contract for performance of the work" and "while
performing the work for which compensation is sought." Or. Rev.
Stat. § 701.065(1)(a) and(b).

It is undisputed that MasTec, Inc. is identified as the
contracting party and was neither registered nor licensed with the
CCB during construction of the pipeline. At the same time, it is
undisputed that MasTec N.A. is identified as principle on the bid
bond and since 1999 has been registered and licensed with the CCB.
Moreover, MasTec N.A. actually performed the work under the
Contract, and plaintiffs present evidence that Coos County regarded
MasTec N.A. as the contractor. Thus, I adhere to my previous
ruling that the evidence presented raises an inference that MasTec,
Inc. and MasTec N.A. acted as one and the same corporation such
that MasTec N.A.'s license could be attributed to MasTec, Inc.

Coos County maintains that even if Mastec, Inc. and Mastec
N.A. are considered the same entity for purposes of the Contract,
plaintiffs' claims are barred nonetheless, because MasTec N.A.'s
CCB license lapsed for a two-week period in August and September of
2003. Bowler Decl., Ex. 4. Coos County relies on the declaration
of Kristie K. Patton, the Licensing Program Manager for the CCB,

21   - OPINION AND ORDER

who avers that MasTec N.A.'s license lapsed from August 29, 2003 to September 15, 2003, despite its submission of a back-dated bond. Declaration of Kristie K. Patton, pp. 1-2; see also Declaration of Karen Taylor. According to Ms. Patton, MasTec N.A.'s license was not backdated, and it is not common practice for the CCB to backdate a bond absent a backdating rider. Id. Thus, Coos County argues that under § 701.065(1)(b), plaintiffs are barred from filing suit because they did not possess a valid CCB license "[c]ontinuously while performing the work for which compensation is sought." Or. Rev. Stat. § 701.065(1).

I decline to apply § 701.065 in this case. It is undisputed that the only reason MasTec N.A.'s license lapsed was the expiration of its bond, and it is also undisputed that MasTec N.A. provided a back-dated bond that covered the lapsed period. Bowler Decl., Ex. 5. Thus, a question of fact exists as to whether the CCB license should have been reinstated as of August 28, 2003. I find it inconceivable that a two-week lapse subsequently cured could render a contractor unable to claim damages under a contract, regardless of the circumstances or whether a valid defense to the claim existed.

Alternatively, I find that § 701.065(1) does not apply to causes of action brought in federal court, as the statute bars only legal action "in any court of this state." Accordingly, Coos County's motion on this ground is denied.

22    - OPINION AND ORDER

B.  IGS and PSI's Motion for Summary Judgment

     In its Second Amended Third Party Complaint, Coos County
asserts claims for contractual and common law indemnity against IGS
and PSI.  As to both claims, Coos County alleges the following:

> In the event that Coos County is found to be liable to
> [plaintiffs], or that [plaintiffs'] denial and
> affirmative defenses as to Coos County's counterclaims
> are found to be valid in whole or in part, then PSI and
> IGS are liable to Coos County for such damages and for
> any amounts of its counterclaims that are avoided by
> [plaintiffs] because of actions taken by IGS and PSI with
> regard to the Coos County Pipeline.

Corrected Amended Answer, Defenses and Counterclaims to Plaintiffs'
Fourth Amended Complaint and Second Amended Third-Party Complaint,
pp. 21-22.  In other words, Coos County alleges that:  1) if Coos
County is found liable to plaintiffs, PSI and IGS must indemnify
Coos County, or if plaintiffs avoid liability under Coos County's
counterclaims by virtue of an affirmative defense, PSI and IGS must
indemnify Coos County for the damages avoided by plaintiffs.

     PSI and IGS move for partial summary judgment on Coos County's
indemnity claim for damages avoided by plaintiffs.  PSI and IGS
maintain that the parties' indemnity agreement - as well as common
law - require only that they indemnify Coos County for liability
arising from claims brought against Coos County - not for damages
avoided by a third party under claims *brought* by the County.[3]

_____

     [3]Coos County alleges only indemnification claims against IGS
and PSI.  Whether Coos County may seek damages avoided by
plaintiffs under a different theory is not before me, although
amendment of the pleadings would be disfavored at this time.

23   - OPINION AND ORDER

Under the indemnity agreement between the parties, IGS and PSI must indemnify Coos County against liability for claims "arising out of or in any manner connected with the performance of the contract and caused by the negligent of willful act of omission of [IGS and PSI] or by the failure of [IGS and PSI] . . . to comply with any of the terms and conditions of the Agreement, notwithstanding any negligence of County." Amended Affidavit of Angela M. Otto, Ex. 1, p. 2. The indemnity agreement thus requires IGS and PSI to indemnify Coos County for any liability that was caused by IGS's and PSI's negligence; it does not require or contemplate indemnity for damages Coos County is unable to recover from plaintiffs under its counterclaims.

"In an action for common-law indemnity, the claimant must allege and prove that (1) he or she has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation should be discharged by the latter." Safeco Ins. Co. of America v. Russell, 170 Or. App. 636, 639, 13 P.3d 519 (2000). "In order to trigger a right of indemnity, [the parties'] liability must also depend on a common duty." Id. at 640. Accordingly, "common-law indemnity is available where, 'in justice,' either the relationship of the parties or the quality of their respective conduct warrants that one of them should bear the full responsibility for joint liability to an injured third party."

Maurmann v. Del Morrow Const., Inc., 182 Or. App. 171, 178, 48 P.3d 185 (2002).

Here, Coos County cannot establish that IGS and PSI owe a duty to plaintiffs to meet the second prong of common law indemnity. Coos County fails to identify a contractual or other obligation between plaintiffs and IGS and PSI that would support a finding of liability against IGS and PSI. Regardless, common law indemnity applies to claims brought against Coos County, rather than claims brought by it. Therefore, IGS's and PSI's indemnification obligations do not extend to Coos County's counterclaims.

CONCLUSION

Defendant Coos County's Motion for Partial Summary Judgment (doc. 154) is GRANTED on the ground that the enforcement and civil actions brought against the County triggered MasTec's duty to defend, and the motion is DENIED in all other respects. Third-party defendants IGS and PSI's Motion for Partial Summary Judgment (doc. 147) is GRANTED. Coos County cannot seek indemnification from IGS and PSI with respect to damages avoided by plaintiffs under Coos County's counterclaims.

IT IS SO ORDERED.

DATED this 6 day of July, 2007.

Ann Aiken<br>
United States District Judge